Bureau v. All American Check Cashing Incorporated, Ms. Walker. Good morning, Your Honors. Helgi Walker, Fort Appellant, All American. The Director of the CFPB unilaterally enforces 19 federal statutes covering the entire consumer finance industry. Her decisions affect millions of Americans, but those Americans have no say in our democracy about how the Director wields this massive power because she is not removable by the President except for cause. That agency structure, combined with other features, violates the constitutional separation of powers because it impedes the President's duty under Article 2 to take care that the laws be faithfully executed. The CFPB is unconstitutionally structured due to four features that, as Judge Henderson said in PHH, while perhaps innocuous in isolation, in combination, are toxic. Those four features are as follows. First, the agency has tripartite governmental powers. That is, it combines the executive, the judicial, and the legislative functions all in one, what the framers called the very definition of tyranny. Second, the CFPB exercises sweeping, classic executive law enforcement power. It reaches almost every American with a credit card, a mortgage, or a loan, probably almost everybody in this room. That is vast executive authority covering a large part of our national economy. Third, the CFPB is headed by a single Director with a five-year term, meaning that Presidents can be stuck with a Director appointed by the prior President and unable to implement their regulatory agenda for most, if not all, of a Presidential term. And finally, the agency is funded outside the appropriations process to the tune of $650 million a year, depriving the President of his veto power over budget bills and of his ability to influence agencies through his budget request process. In the words of the Supreme Court in Free Enterprise Fund, where in all of this is the role of oversight for an elected President? This scheme reduces the President to the role of frustrated bystander. And our point is not academic. In the next election cycle, there will be a new President, perhaps a President Elizabeth Warren, who has decided views about the agency. She will be unable to implement her agenda because President Trump's Senate-confirmed appointee, Kathy Kraninger, will be in office until 2023. The D.C. Circuit has assessed this at en banc. Our Court, of course, has the Collins en banc matter. The issue is also pending in front of the Ninth and the Second Circuit Panels. Is that the Constellation of Circuit Courts? That's correct, Judge. We're probably not going to be the last word here. Well, we certainly would like you to have a word in this matter. Well, if we're going to contribute at all to the dialogue, it seems to me that if we're going to declare unconstitutional an entire independent agency, which, as you say, has sweeping, was enacted in order just to address an economic crisis. So if an intermediate court is going to declare the structure to be unconstitutional, and again, that structure is one Congress enacted and the President approved, it would seem to me the one thing we have to do is to describe exactly what the Goldilocks zone is for an independent agency to be constitutional. So when you began by saying, well, combined with others, and in your brief you say exacerbated by other features, or innocuous in isolation but in combination toxic, none of that tells Congress what it can do to make an agency. So my question, the most helpful thing you would tell me is what features would be constitutional? In other words, would the structure be constitutional if we knocked out for cause or if we knocked out the funding source issue? Your Honor, Congress had a roadmap for how to create a constitutional independent agency. It could have done what it did when it created the FTC. And indeed, that was the original proposal, was to model this agency on the Consumer Product Safety Commission, which is a multi-member commission. There is one layer of for cause removal but traditional appropriations funding. The focus is the multi-member, and yet that was in existence in Humphrey's executor, that was existence in Humphrey Enterprise. The Supreme Court never, ever said that has constitutional significance. Nobody challenged. But you would think when it strikes down the structure in Humphrey Enterprise, they would have said, well, there's a counterbalance here because it's a multi-member entity. So I guess my point is, I don't see in the entire history of removal case law the Supreme Court ever saying this is constitutionally significant. It's true the Solicitor General now in the D.C. Circuit and in its ops search is saying this is the magic bullet, the multi-member, but it isn't even intuitive to me. And I'll make it a question so I don't consume your time. In your brief, you quote the framers as saying, as to the President, we wanted a singular person because a plural executive would be hard to find accountability for. So your quote points out that it gives the President much more power to have just one head than it does to have multiple heads. Well, I'll give two responses to your question, Judge Higginson. The baseline rule is established in Article II and in Myers, and the Supreme Court reiterated that in Free Enterprise Fund, which is the President generally has power to remove executive officers. But the Court's job, I don't think you need to do this, is to say, here's exactly what Congress can do. We have two exceptions to the Article II test, Humphreys and Morrison, and this agency doesn't fit within either model. And consistent with your Article III limitations, that's all you need to hold here. Has the Court ever said those two cases were exceptions? You have a footnote saying that then-Judge Kavanaugh questioned the viability of them, but I haven't seen the Supreme Court question the viability. The Supreme Court in Free Enterprise Fund described those cases as, quote, limited, end quote, except for the general rule that executive officers have to be removable and removal restrictions have been upheld, quote, under certain circumstances, end quote, the Supreme Court said in Free Enterprise Fund. And what Humphreys explained is that this is a case-by-case analysis. There are two propositions clearly established, generally unlimitable removal power for principal executive officers by the President, and secondly, a commission like the FTC that was upheld in Humphreys. But if it doesn't fit into the Humphreys model, and we think the independent counsel model in Morrison v. Olson also doesn't apply, it's not constitutional. Is the statute that's being enforced by this agency substantively different than when it was under the aegis, I guess it was, of the FTC? It's different from the FTC in three important ways, Judge Higginbotham. We have here, of course, a single unitary... In terms of the statute itself, can the FTC have brought this action? The FTC doesn't have as broad authority as this agency does, and at the time Humphreys decided... When the statute that's before us was enacted, it brought up, it really consolidated the I wanted to follow with history a little bit. This particular action, and they asked the question then is whether or not this particular defendant would have been vulnerable to an action that enforced virtually the same statute, albeit for the FTC. Well, the action that's been brought against our client, Mr. Gray, was not under any of those... I understand that, but that's only because the underlying, what I'm saying is the regime of law was there. You move the enforcement mechanism to another. I'm just trying to understand. Part of this goes to the question of remedies, but if any, so... Well, we think what you just described made it worse from a democratic accountability standpoint, which after all is the point of separation of powers. Well, my question is, would the FTC have proceeded against these people itself? You point to the FTC as the model of propriety, relatively speaking. So the defect then lies at the same normative statutory, the same standards set by the Congress is now the enforcement mechanism of their agency. I'm not talking about the consequences. I'm just understanding what... The answer to your question, Judge Higginbotham, is no. The FTC could not have brought this action under its organic statute, because this action is brought under the new provision of the CFPA that gives the director authority to go after so-called abusive, deceptive, and unfair practices, which is language that the director, even though the agency... Well, Section 5 of the FTC wouldn't encompass that. When I was a practitioner many, many years ago, my clients found that a lot of procedural power to the FTC was sweeping. But the FTC commissioners are removable for cause by law. I understand that. That's not my point. I'm not trying to make a point with you. My suggestion to you is that this enforcement mechanism could have gone forward by the FTC. That doesn't answer this question precisely, but it helps to understand one of the many consequences. What's the remedy for this? Your quick answer in the brief says, well, we know that if this is a structural defect, they're entitled to relief. How far back... What all is to be taken down by this? Because I think that bears on the issue, main issue. We ask you only to take down the enforcement action in this case. We moved for judgment on the pleadings, and Judge Barber denied that motion. We think you have... that the structure itself is flawed, and that's your argument. And if you make the structural argument, then how is it that everything that they have done is not flawed? Well, you have two choices there on prospective remedies, Judge Higginbotham. You can invalidate all of Title X, which is what Judge Henderson and Judge Preska would have done, or you can have discretion to choose between those two remedies. But whether you knock down all of Title X or sever, you have to give the defendant in the case at-bar relief if you announce a new constitutional rule in this case. Judge Silberman made that very clear in the NRA case in the D.C. Circuit, where they severed... Well, the reality is there's very little interest in this case, quote, this case, what brings us here. This is so quickly moved to an issue that's been around for a long, long time. And all the people want to jump into this and so forth. Mississippi lawyers suddenly got very good assistance. This is an issue that's been around a long time. It's been a hotbed issue, et cetera, et cetera. I have some concerns about the fact that in this particular case, what brought us here. I take your point, Your Honor, and that's exactly why we have said that if you agree with us on the constitutional merits, you can either sever or strike down all of Title X. But no matter what, and this goes exactly to your point, Judge Higginbotham, you have to grant this defendant, Mr. Gray, relief. And we're up on interlocutory appeal of Judge Barber's denial of our motion... The surgical response to that is you say we should simply make this an at-will statute. Excuse me? We would, what we would, the relief we would grant would be to, would simply be to, of course they get relief, the parties here, but the constitutional adjudication that you would be satisfied with is to move from far cause to at-will. We think you certainly have the authority to simply sever the removal... I understand, but the relief you seek is to remove the far cause? Are you satisfied that if we give it to at-will? We have argued for invalidation of all of Title X for the reasons in our brief, but if you agree with us on the merits, you could just sever, and this is what Judge Kavanaugh... But you're not answering my question. Yes, you could just sever... Is this statute constitutional if we just sever that at-will? We, our position is that it would not be, but still, Judge Kavanaugh did give you a road map if you disagree with us, which is you could sever the removal restriction on the President's authority, and this would revert to at-will removal. What is your position with regard to the, it's not much point in doing something if we leave, we still have a structural defect out there, acting without authority amiss somewhere. So I'll push you a little bit on that question, because you're a very good advocate, but you're not, you're really not responding to my questions here, which are simply that if we say that the far cause is an excessive burden upon the executive power to take care clause, and we say that, and hence that relief you seek is simply to go to an at-will, sever that out. Is the remaining structure there suddenly well constitutionally, or are we simply just taking it a bite at a time? Well, I don't want to disagree with you, Judge Kavanaugh. I'm not making an assertion. If you agreed with us on the merits and you wanted to sever, we think that would be a good outcome, as long as you grant Mr. Gray actual relief. But there are other provisions of the statute. You are not answering my question, and you're being evasive now. There are other provisions of the statute that we think contribute to the unconstitutionality. Yes, Your Honor. So we take this down, and it still remains a structure that is unconstitutional, and its enforcement mechanisms are going out there. Is that right? There are other provisions that contribute to the unconstitutionality, but if you give Mr. Gray relief, if you grant our motion for judgment, we won't have anything to do with it. Well, let me turn the question back a different way, then. So what you said, it is not curative to the constitutionality of this structure under your argument, that for cause become at will, which means that for the constitutional structure to stand, you're going to have to be attacking other provisions there, right? That is our position, Your Honor, correct. But I don't need to die on the mountain of how many provisions of the Act you need to sever or not sever. If you agree with us that, taken as a whole, the statute impedes the President's removal power, and you grant relief to the defendant so far. That was my first question. It's sort of been 25 minutes on the same question. If we're trying to tell Congress how to do it right, it's very difficult for the arguments to always be, well, the other features contribute to the unconstitutionality. They exacerbate it, in combination with it, in a whole. That doesn't give any guidance to the Congress. So the question you're being asked over and over again is exact same structure without for cause removal protection. Yes or no constitutional. Yes or no. We think not. So what is the other feature that, in combination, makes it toxic? It's the for cause removal limitation. It's the five-year term. It's the funding outside the appropriations process. It's the sweeping law enforcement power given to the agency, and it's the tripartite powers vested in the agency. As I read it, I mean, there isn't that much in 200 history of removal. Those are just little features picked out from cases where the court actually upheld the Constitution. And that's the problem. That comes from Humphrey's executor. That comes from Weiner. That comes from Morrison. All those cases, the Supreme Court said, those restrictions are constitutional. So I don't see where the court has designated those features to be, in combination, toxic. Because the Supreme Court has never upheld a removal restriction on a principal officer outside the multi-member contact. There is no precedent, and the CFPB has none, for all of these features being combined to make a director completely independent, which was Congress's goal here, of either the president or the executive branch. The Supreme Court has never said that's okay. So the emphasis is for cause. That's the principle. This is a basic question, and it would help me. What case can we look to which describes how for cause, which is equivalent to inefficiency and neglect, is so much more reducing of the president's power than at will, that he becomes a bystander? Myers. The Supreme Court's landmark decision, the Free Enterprise Fund case, called it in Myers. But in Myers, like in Bauscher, Congress was aggregating to itself that power. My difficulty, frankly, at a baseline for these questions is, I don't really see that the president's power is diminished by having to say, well, you were inefficient, and that's my reason for firing you. It would seem to me the larger constitutional problem is, once he does that, is there even judicial review? Wouldn't political questions step in? So the problem more is, do you entangle the president in litigation? It's not that a for cause restriction is something that has turned the president into a bystander, just like that. Well, with respect, that reasoning is contrary to Myers and Free Enterprise Fund. Free Enterprise Fund said the two layers of for cause removal rendered the president a bystander. And in Myers, the Supreme Court said— But that two layers implies one layer wouldn't. And in Myers, the court said one layer is too much. The president is supposed to be the quarterback of the executive branch, and he can't be the quarterback if nobody listens to the calls that he plays. What's the case that describes that the quarterback has now been hamstrung? Is it the only one you've got, Myers? Well, I would start with the language of Article 2, which says that the president must faithfully execute the laws, all of them, not federal laws, minus those given to the CFPB director. And then I would point you to Myers and Free Enterprise's reaffirmation of the baseline constitutional rule. It depends on how you look at it, Judge Higginson. Is it that Congress can do whatever it wants as long as that's not forbidden? No. The rule is that Congress can't touch the president's removal power except in limited circumstances where the Supreme Court has said it's OK. And if this case doesn't fit either of those two models and it does not, then it has to be unconstitutional. Congress has to face the consequences. Let me just—let me interrupt you to ask you why you still have time. As a prudential matter, shouldn't we—shouldn't this panel await the decision in Collins, which, as you know, is under submission? Obviously, the in-bank court wouldn't be bound by anything that we would decide here anyway. And so give me your answer to that because the other—I'll ask the other side the same thing. And also, is there still pending in this case a request for in-bank consideration? I'll start with in-bank. We recognize that we're here now today and we don't need in-bank consideration. We are more interested in a resolution of the merits and a prompt resolution of the merits. We would ask that you, for those reasons, not wait for the outcome of the in-bank decision in Collins. Collins may, of course, go off on statutory grounds under the APA. The court may not reach the constitutional question. But in any event, we think that the CFPB is just as insulated from presidential control as the FIFA. If you look at all five factors in the panel opinion in Collins, I recognize it's been vacated. Well, but wouldn't it be— They are almost exactly the same. Excuse me for interrupting you.  You're out of time, but it's on my time and I apologize. But wouldn't it be pretty audacious of this panel to go ahead and make a decision on the constitutional issue in terms of the removal issue while the in-bank court is still considering the same question and could, at a moment's notice, overrule anything we would say? Well, Judge Smith, you know more about what's going on in-bank on Collins than we do. All we know is that our client would like prompt relief. And really, you should consider the issues separately. I just want to point out that of all five factors in Collins, they're all the same here. A four-cause removal restriction, number one, is the same. The independent director structure with a five-year term is the same. Lack of bipartisanship requirement is the same. Funding outside the appropriations process is the same. And oversight by another body is, we think, not materially different because the FSOC is really a paper-typer. It's frankly more like a paper kitten because it's not terribly intimidating even when you look at it that way. Okay. All right. You've answered the question. Thank you. And you've saved your full time for rebuttal. Thank you, Your Honor. Thank you, Ms. Walker. Mr. DeMille-Wagman? May it please the Court, I'd like to correct one slight error with respect to a case citation that defendants gave, and that's with respect to the Free Enterprise case, Free Enterprise Fund v. Public Company Accounting Oversight Board. Defendants said there that that case indicated that Humphreys and Morrison constituted a limited exception. What that case actually said, and it's on page 495 in that case, was that four-cause removal was a limited restriction on the President's authority. A limited restriction. Not that those two other cases constituted a limited exception. I'd also note, and perhaps this would have answered some of the other questions that were asked, at page 21 of defendant's opening brief, they concede that the Bureau's structure would have been constitutional if it had been headed by a multi-member commission whose members had been removable for cause. Not at will. But in fact, the same constitutional cases, the same Supreme Court cases that uphold constitutionality of a four-cause removal provision at a multi-member commission, those same, those very same cases uphold the constitutionality of the Bureau's, the four-cause removal at the Bureau. First, there's Humphreys' executor in 1935. The court upheld four-cause removal for the five members of the Federal Trade Commission. 1988, Morrison v. Olson. The court upheld four-cause removal for the single independent counsel. Defendants point out that the independent counsel was an inferior officer. But the Constitution requires the President to take care that all laws are faithfully executed. Not just laws that are executed by principal officers. There's no exception for inferior officers. There's no exception for that. But the inferior officer point comes out most prominently in Morrison. And in Morrison, the court does seem to say that the nature of the functions of the entity is less relevant. And yet, in your brief, you've highlighted the nature of the functions as being core to the separation of powers analysis. No, Your Honor. I think the court in Morrison did focus on the functions. And in fact— And yet they were very largely executive. Yes, they were. They're executive functions. And in fact, in footnote 31 of Morrison, the court analogizes the functions of the independent counsel to the functions of the FTC. The Bureau's functions are very similar to those of the FTC. It's hard to imagine. No two administrative agencies are exactly alike. No two people are exactly alike. Even identical twins are somewhat different. But it is hard to imagine two independent agencies with functions more similar than the Federal Trade Commission and the Bureau. You think the Bureau is not an anomaly as the court had observed negatively in Free Enterprise about that entity whose acronym I can't pronounce. What was the anomaly in Free Enterprise is that there was dual layer of four-cause removal separation. No, it's not an anomaly because in analyzing the constitutionality of a four-cause removal provision, there are two issues for the court to consider. One is the functions of the agency. Two is accountability and responsiveness to the president. The Bureau is no anomaly at all. As I said, the Bureau's functions are very similar to those of the Federal Trade Commission. As to accountability, in Morrison, the court made clear that a four-cause removal provision does not interfere with the president's constitutional obligation to take care that the laws be faithfully executed. The court explained there that what was important was whether a restriction on the president's removal authority still left the president with ample authority to make sure that the individual in question was performing her duties in accordance with the law. And the court went on to say that so long as the president could remove that official at least four-cause, the president had sufficient authority. That's what the president has here. The president can remove— Counsel, let me ask you a question about four-cause. If I look at the four-cause requirement and I look at the—that's been laid side-by-side for many years with the SEC commissioners and others, which have been virtually at will and never been removed. And obviously not removed because the political will wasn't there to do so, I suppose. But my question would be that if we look—except that the four-cause there, the president can remove four-cause. The question is how would that be enforced, if any? Suppose we look at and take the reality of it that this is a political question in the sense that four-cause is left in and the president must demonstrate four-cause. But then essentially that any relief, a disagreement with the president's exercise of four-cause ultimately becomes essentially a political question. The point being that his decision would—we would have framed his decision. The president must address and declare that that individual is lacking in cause. But the relief for that is simply the political process. That sounds like, well, that's an at-will cause because the president can do that. But it's politically significant for the president to have to exercise that power framed by the fact that he testified, quote, unquote, good cause. Remember the exchange with FDR. He did not want to go there. There's reluctance to do that. That's my question is, is there a role at all for the answering some part of this question with a political question doctrine? It may be, Your Honor. We don't know that. It's not really well fleshed out in the cases. It may be problematic if the president ever attempts to move unofficial four-cause. It's happened a few times.  He tried to avoid four-cause for a variety of reasons. Same in the Wiener case in 1958. He removed him. In Humphrey's executor, he said he wanted a man of the same—of his same mind, basically eye to eye. And Wiener, he said that—President Eisenhower said he wanted his own man in the position there. But it's an open question as to what exactly would happen. And it's true four-cause removal is not often used, but— The very fact that we don't have those kinds of challenges suggests possibly that it really is functioning as a political question itself. The president has got to—but there is a difference. It would seem to be a difference, like your comment about that, between an at-will removal and a four-cause removal, albeit some specification that the want of any explicit enforcement power beyond the political process. That's certainly true. An at-will removal, once the president removes a person whom he is entitled to remove at will, that person basically has no rights at that point in time. That's right. But—that's right. But my question is that—but it is not the same—we leave four cause there from just testing how this would operate. But the—it becomes as to whether or not—the president says, I'll fire this man for cause. Yes. And we—he doesn't go to a court of law to answer a challenge to that. And the way it operates now, it never happens. That's right. It's rare that it does happen. I think the last four-cause removal was during the Nixon administration, and there wasn't—the individual ultimately just accepted it. That would have been an opportunity to test the issues raised. They're very interesting ones, complex ones. They're not really raised by this case, of course, because there's been no attempt to remove the Bureau's director for cause. Efficiency gives the president a great deal of power. In fact, the Congress has actually created—has recognized that the differences between the—and our little three-word has questions about integrity and malfeasance and so forth. But responding to delete efficiency as a basis for cause because they—right? Yes, although in our statute it is. It's inefficiency, neglect of duty, malfeasance in office. I understand that, but the word efficiency has been read to be really giving the president a—interpreted by the Congress itself as being—providing a great deal of latitude. When the Congress wants to step it up— It could be. They dropped the word—they've done that. They dropped the word efficiency out of the enumeration. They didn't leave them until— It could be, Your Honor. In Bauscher v. Siner, the Supreme Court commented about a for-cause removal provision like that and said that it was, in fact, quite broad and gave the president a fair amount of power. Now, Judge Higginson, you raised a question earlier. You raised the point that I think comes up in the Free Enterprise Fund where Chief Justice Roberts said that a diffusion of power carries with it a diffusion of accountability. What that means relative to the issues here is if the president is concerned about action or potentially inaction at a multi-member commission, it's more difficult for the president to know who is actually responsible. At the Bureau, however, because the Bureau— Well, it's easier to fire one than five, so that ain't complicated. Well, it's easier to fire one than five, but let's suppose the president is concerned about inefficiency. How does he know which of the five commissioners at the Federal Trade Commission is responsible? At the Bureau, the president always knows who's responsible because the Bureau has a single director. The Bureau, in that sense, is more accountable to the president than a multi-member commission. I don't follow at all the argument that you made a few minutes ago about comparing the FTC. The CFPB's powers really dwarf what the FTC had in 1935. The FTC didn't even assert rulemaking power until 1962. It did have the authority to conduct investigations to make recommendations to Congress, but its authority was non-retroactive, and it couldn't bring a civil action in district court for monetary penalties. So that was the FTC that the Supreme Court was addressing in 1935. Way diminished powers compared to your clients. Your Honor, the FTC in 1935 could enforce Section 5 of the Federal Trade Commission Act. It could enforce the Clayton Act prohibiting unfair methods of competition. Yes, it enforced those using the administrative process. But note that in 1988, when the Court discussed for-cause removal for the Independent Counsel, it compared the functions of the Independent Counsel to the FTC in 1988, at which time the FTC could pursue civil penalties. It could take action in court. And then, again, in 2010, when the Court upheld for-cause removal for the Public Company Accounting Oversight Board, at that time, the Oversight Board, it said that one layer of for-cause removal was okay for the Oversight Board. The Court noted that the Oversight Board had expansive powers with respect to an entire industry. The Federal Trade Commission currently enforces or administers some 70 statutes. Section 5 of the FTC Act covers virtually the entire economy. There's a few cutouts, but it covers virtually the entire economy. The Bureau is limited to consumer financial products and services. The functions of the Bureau are far less than the functions of the Federal Trade Commission. And the Bureau is every bit as accountable to the President as the Federal Trade Commission or any of the other agencies that have for-cause removal. Well, it's completely independent of the budgetary process, as your opponent has well pointed out. No, it's not, Your Honor. There's no veto over the budgetary process because it's locked into the-locked in without the need for authorization or appropriation. Your Honor, the appropriations process, Congress appropriates money. Congress decided that the Bureau would be funded outside the annual appropriations process. And remember, there's nothing in the Constitution that requires that any agency be funded as part of the annual appropriations process. In fact, most of the financial regulatory agencies are funded outside the annual appropriations process. The Federal Reserve Board, the National Credit Union Administration, the Office of the Comptroller of the Currency, FDIC, all funded outside the annual appropriations process. As is the Public Company Accounting Oversight Board, where the court upheld for-cause removal. That oversight board is funded outside of the appropriations process. In any event, the Bureau's funding in no way impinges on Congress. It in no way impinges on the President. Congress is free, just as it was free to set up the Bureau's funding as it did. It's free to change it at any time, today, tomorrow. It could zero out the Bureau if it wants to. The President, he has the same power with respect to budget and appropriations with respect to the Bureau as he does with respect to any other agency. The President's authority with respect to appropriations comes from the Presentment Clause of Article II. The President can put something in his budget. I know he did last year. I haven't seen the budget that he proposed yesterday. Last year, I know he did put something in his budget recommendation. That's a velocity of answers. But let me ask you sort of the same hard question we were asking opposing counsel, which is there has to be a limiting principle. In other words, how do you acknowledge the robust rulings of Myers, Bauscher, and especially most recently and highlighted by Judge Kavanaugh, free enterprise? Other than saying, well, that was a double for cause. That's a highly technical reading. But Judge Kavanaugh, I guess the question is could you engage directly with Judge Kavanaugh's dissent in the En banc case? Yes, I can. And let me start first with a line that Judge, which I think illustrates Judge Kavanaugh's position best. And that was in his panel opinion, which was subsequently vacated, but I think it clarifies exactly where he stands. That's at 839, Feb. 3rd, at page 32. What Judge Kavanaugh said was that in terms of responsiveness and accountability to the President, it makes no difference whether an agency is headed by one individual, by three, or by five. Judge Kavanaugh believed that the independent agencies are unaccountable to the President. So what he looked for was some other source of accountability. Perhaps fellow commissioners account — fellow commissioners take care that the law is faithfully executed. Perhaps there's some sort of authority imposed by the chair of the agency. But that's not the right analysis. The right analysis comes from Morrison. Morrison made clear that the four-cause removal provision gives the President — and it's the President. It's only the President who has this. It gives the President ample authority to make sure that the laws are faithfully executed. That is the President's responsibility. If Judge Kavanaugh were correct that there's no difference between any one, three, five, that there's no accountability at all, then all the administrative agencies that have four-cause removal fall, including the Federal — If you rephrase the Collins Panel statement, the FHFA, by contrast to the CFPB, the salient differences would make CFPB constitutional. Do you recall that line? I do recall that line. And what's your thought as to that formulation of the comparison? I think it drew some very fine lines there, Your Honor. What I think that maybe the Collins Panel should have focused on a little bit more was the functions of the agency. What we know is the Supreme Court has upheld four-cause removal for agencies like the Federal Trade Commission. The FHFA is very different. And it is — you asked about the Goldilocks zone. The Goldilocks zone, we fall well within it. It is circumscribed or it's laid out by the line of Supreme Court cases, including Humphrey's executor, Morrison, Free Enterprise. We fall within that because our functions are very similar to, maybe even less significant than the functions of the Federal Trade Commission. We have every bit as much accountability as the Federal Trade Commission or any other agency. That's why we fall within the Goldilocks zone. Outside the Goldilocks zone, that's much harder for me to speak to. Defendants suggest that the logical extension of our position is that Cabinet officers could be removable at cause. Not at all. That is not our position, nor is it a logical outgrowth of the arguments we have made. So far, neither of you have mentioned the founding era, and yet we have amici briefs the D.C. Circuit did from scholars on both sides saying that's the most relevant focus. We should look back to what was done with the Treasury Department 200-plus years ago. Do you have an opinion on that being a salient way we would assess separation of powers doctrine cases? Yes, Your Honor. What that analysis leads to, and it's discussed in some of the cases. I believe it's discussed in Free Enterprise. It may be in Morrison v. Olson where the court held that. What the first Congress concluded was that the President had a power of removal. Remember, the Constitution deals with the appointment clause for the President but is silent on the removal power. So there was an issue coming into the first Congress as to whether the President inherently had removal authority with respect to the Secretary of Treasury, with respect to any of the officials he appointed. That was the essential debate in that first Congress. They weren't discussing for-cause removal at all. There was nothing about for-cause removal. For-cause removal only comes up, basically it starts coming up, in 1887 when Congress creates the first administrative agency, the Interstate Commerce Commission, whose commissioners were removable for inefficiency, neglect of duty, malfeasance in office. But, no, the debates in the first Congress go no further than to hold that the President has removal authority. We agree that the President has removal authority, and there is the for-cause provision puts, but a minor limitation on that removal authority, and it's a limitation that is appropriate in the context of an agency that performs the functions that the federal trade commission. You recall the amici scholars against you say, well, if it's going to be for-cause, it's got to map exactly onto Humphrey's executor, including the multi-member commission. If that were so, if it had to map exactly on the Federal Trade Commission of 1935, then the Federal Trade Commission of 2019 is out. So is the Federal Reserve Board. It's out. There is no agency that maps exactly onto the Federal Trade Commission of 1935. The Federal Trade Commission of 1938 didn't map onto the Federal Trade Commission in 1935 because the FTC Act was amended then. There's no two agencies that map exactly. And in fact, some of the briefs look to the fact that in Humphrey's executor, the court said that the FTC performs quasi-legislative, quasi-judicial functions. I think Justice Jackson had something to say about the word quasi. But in any event, in Bauscher v. Sienar, the court said that the essential core of an executive function is interpreting a statute and acted by Congress to carry out the legislative mandate. That's what Bauscher described as a core executive function. In Humphrey's executor, the court, although it described the FTC's functions as quasi-legislative, quasi-judicial, it said, and this is at page 628 in the decision, 295, 628, first sentence, first paragraph. The court said that the FTC was created to carry into effect the legislative policies embodied in the statute in accordance with the legislative standards. That's exactly the same. Well, so if that's true, then you could have an independent agency with no removal power because that agency, according to what you've just said, would still be implementing the will of Congress as part of its executive power and leave the president out of it. Just let each of these agencies do its own thing and tell the president that he or she can't remove. Not at all, Judge Smith. Well, but you were speaking only of the will of Congress having enacted the statute that creates and feels like the will of Congress. The will of Congress figures out some funding for the agency. Once that has been done and either the president has signed it or there's overriding of a veto, then why under your theory does the president have any role at all? Because, Your Honor, the president proposes a budget. He makes a suggestion as to how much he thinks the bureau should be funded. Maybe he thinks it should be funded. Zero. He sends that to Congress. If Congress sends back an appropriation bill that does not zero out the bureau, that does not change the source of the bureau's funding, he vetoes it or he threatens to veto it. And as we saw just recently, a threat from the president to veto an appropriation from Congress is mighty powerful. It can close down the entire government, and that has an impact. And then Congress listens, and Congress eventually has to decide what it's going to do. It may accept what the president recommended. So the president's role is in no way diminished. Defendants argue that there's a bipartisan requirement at multi-member agencies. That is incorrect, and it's certainly hard to fathom how a provision that restricts a president as to whom he can nominate to an agency based on the nominee's political affiliation, it is hard to see how that enhances the accountability of the agency to the president. Nor is it constitutionally significant whether the president can or cannot designate the chair of an agency. The president can at some agencies. He doesn't have that authority at other agencies. In Humphrey's executor, you will find no mention of the president's authority to designate the chair. Because in 1935, the president could not designate the chair of the Federal Trade Commission. Can you draw any support or difficulty from First Congress's creation of the United States Bank, the Bank of the United States? No, Your Honor. I don't. I don't. I'm not sure. That would present a problem. Well, problem or support. In other words, if shareholders determine a considerable amount of that entity's structure. If shareholders themselves control the Bank of the United States, and yet the First Congress authorized that, wouldn't that be a significantly larger derogation of presidential powers? Perhaps this is similar then to Boucher versus Sinar, where Congress assigned an executive function to the Comptroller General, but left removal authority with Congress, and the court held that that was unconstitutional. The president had to have authority. It might be the same sort of problem in that situation. That is not what we have here, however. What we definitely do have here and was highlighted by the Collins panel was the Oversight Council, correct? Yes. And yet has that entity ever stayed or stopped any action by the Bureau, to your knowledge? It has not, Your Honor. It has authority only with respect to rules. We don't rely on that because it is the president's obligation to take care that the laws be faithfully executed, and the president has authority. He has ample authority because he has the authority to remove the Bureau's director for cause, which takes care of that portion of the analysis in this context. You know, I found it interesting with the argument of the unitary president with this country's extraordinary embrace of private attorneys general, whereby under the Clayton Act, among many other securities acts, whatever, the enforcement of these laws are left to private attorneys general. And in the example of the Clayton Act, the question of mergers and very important issues, et cetera, et cetera, go down in Article III. Now, I recognize that our court has said that, well, that just patrols the Article III branches themselves. But backing away from this in terms of the vision that the president has this extraordinary reach into all, by execution of the laws, take care that all things flow through him defies the reality that extraordinary amount of the enforcement of the norms set by the Congress is through Article III courts, not Article II. I think that's a very interesting point, Your Honor. I agree that that's an issue. That extends the bounds even further. But it's not where we are in this case because we— Well, I understand you, Your Honor. I agree. It's an interesting issue. That's an interesting issue. Now, we would ask that this court uphold the constitutionality of the Bureau's structure. You had asked at the beginning— Well, while you have time left and you're moving to the remedy, which I was going to ask you about, so let me just read—you're well aware of it, but I'm going to read what you say at the end of your brief and then ask you to explain it because I don't understand it. You say, if this court concludes that the for-cause removal provision is unconstitutional, it should sever that provision, and with that having been severed, the Bureau would continue to administer and enforce the consumer laws. Therefore, if this court declares the removal provision inoperative, it should remand this case to the district court to permit the reconstituted Bureau to continue to pursue this action. Why wouldn't the district court be bound to dismiss this action because it was an action brought under a provision that we would have declared to be unconstitutional? Actually, Your Honor, in this case, February 13 months ago, the complaint in this case was ratified by the Bureau's acting director, Mick Mulvaney. Mr. Mulvaney had been appointed to fill a vacancy at the Bureau pursuant to the Federal Vacancies Reform Act. As such, he was at all times removable by the President at will. So what that means is what they want is to have their complaint issued by a Bureau headed by a director who's removable at will. That's what they got. If this court severs the for-cause removal provision, then the further prosecution of this case, prosecuting them for the unfair, deceptive, and abusive acts or practices that we've alleged in our complaint, would be pursued by a Bureau whose director would then be removable at will because he would have severed the for-cause removal provision from the act. Let me ask you the same question that I asked Ms. Walker, which is whether, in your view, this panel should await a decision in Collins. Your Honor, of course, I don't know what's going on in that decision. I did listen to the oral argument in that case. There were a lot of issues that were discussed, not so much with respect to the constitutionality of the agency, but I realize that is a live issue in that case. If this court sitting on bonk is going to resolve some of the constitutional issues that are relevant to this case, yes, I think this court should await a decision. I presume you know, have some idea of what the scope of that decision is going to look like, and so it might be appropriate to await. I don't know. We would ask now, we think that this court, absent that possibility, we think that we would ask that this court resolve the issue. All right. Thank you, Mr. Wagman. Ms. Walker, you've saved time for rebuttal. Yes, sir. I saved 10 minutes, and I'm glad I did. First, I'd like to dispel the notion that this case involves a political question. The removal restrictions were clearly at issue in Myers, Humphrey, Weiner, and Free Enterprise Fund. I don't suggest it did. I don't suggest it did. I was raising a different – And I was going to get to that too, Judge Higginbotham. Free Enterprise Fund at 497 addresses a particular president or president's reluctance to join some of these issues and actually fire somebody. The Supreme Court said the separation of powers does not depend on the views of individual presidents. The president can always choose to restrain himself in his dealings with subordinates, but he cannot choose to bind his successors by diminishing their constitutional powers. That's at page 497. Judge Higginson, you raised the decision of 1789. There, what was ultimately decided, Madison withdrew his proposal. He was wont to change his mind. And Congress said nothing about the Secretary of Treasury's removability because it didn't even want to hint that anybody could ever limit the president's removal power. And the National Bank, Judge Higginson, has no or had no law enforcement power over private parties and private businesses like this agency does. It had no law enforcement power at all. We agree with my friend, Mr. Wagman DeMille, that the fine lines that distinguish the FSOC oversight from the FIFA Advisory Board are not the proper analysis. We actually agree with Chief Judge Stewart that that doesn't make a constitutional difference. To the extent the functions are what matters, this agency has sweeping executive authority, as I said at the beginning, over almost every American and every business that goes with a credit card, a mortgage, or a loan. That's much vaster than the FIFA's authority over Fannie Mae and Freddie Mac. Do you embrace the UMBC scholars supporting your position, that the only way there could be for cause would be if it maps right onto Humphrey's executor? Is that your position as well, or is that more extreme than your position? I believe it's the same as our position because our framework is that you have to fit in to an existing adjudicated exception to the president's general removal power. And would it be right when he lists the number of agencies, therefore, that would logically fall? Well, we don't agree with that, Your Honor. We think, and this goes with another question that you raised that I wanted to address in my time on rebuttal, that we think the CFPB is an anomaly. There is no historical precedent for an agency like this, and I can't do any better than to refer you to Judge Henderson and Judge Kavanaugh's lengthy analysis of all the historical reasons why there is, in fact, no precedent for this agency. But so the answer is you agree with the amici analysis that to be constitutional, it's got to map right onto the Humphrey's executor scenario, but you're still saying that the host of institutions that he says don't might well still be constitutional because of some array of factors? I would not embrace that unqualifiedly. We are here representing our client, and our view is that this agency is unconstitutional because it doesn't fit within an established exception. Somebody raised the point that actually I think it was my friend, Mr. Wagman-DeMille, that the other side's theory has no logical stopping point, and he, though, never gave a principled reason why a Cabinet officer couldn't be subject to for-cause removal. And there is no inherent definition of what is a Cabinet officer. The closest the Constitution comes is in the 25th Amendment to say that the heads of executive departments are in the President's Cabinet. But you're only the head of a department, an executive department, until Congress redefines you as an independent agency. So even on the CFPB's theory, almost everybody in the executive branch could be subject to for-cause removal. Finally, on the question of remedies, Judge Smith, we agree that if you find for us on the merits, the proceeding can't continue on remand. Whatever Director Mulvaney did, he is not in office anymore. We now have Director Kraninger. She is protected by the for-cause removal provision. The issue is live. The issue is joined. We cannot go back on remand for further prosecution of this case and continue to be subject to an unconstitutional agency. Why not? Because we have a right not to be subject to an unconstitutional agency. Well, you're not. On remand. You have now a constitutional one that's going to go forward. You're now being subjected to the constitutional operation. Because Director Mulvaney's attempted ratification failed, clearly, under the Supreme Court's decision in NRA Political Victory Fund. That's in our briefs. But the most basic reason why is that by the time he tried to ratify in February of 2018, the statute of limitations had run. The agency well knew about the alleged unlawful conduct by February 5, 2015, because they issued their first CID. I understand that might give you another defense to the action itself, the limitations barred. I'm not tolling, but that doesn't— It's not a defense, as we're raising it now, not a defense to an action. The agency has raised ratification as a way to try to get out of the constitutional box. But that effort fails on its own terms because we're now subject to a director who is removable only for cause. At page 12 of their brief, they said that if we're right on the merits, all we would be entitled to is enforcement of the CFPA by a director who is removable at will. We don't have that today. And no matter what, you have to grant relief to this plaintiff—excuse me, this party at bar and reverse the denial of our motion for judgment on the pleadings. I'd like to close by pointing out what sometimes can be lost in the abstract discussion of separation of powers doctrine. The framers' purpose was very practical. It was to ensure that the people remained in control of the executive branch and the executive branch officials were accountable in the democratic process to the American citizens. The director of the CFPB is not democratically accountable to Mr. Gray, my client, or indeed to any of us. Do we have any idea how much money this agency has collected through its prosecution of these laws over the period of time it's in place? The civil penalty fund, which is also money independently available to the director, stands currently at $525 million. Okay, so that's going to have to be redistributed. By your theory, that's got to go back to where it came from? I think that's a question you could leave to another court, but that's really— But that's the only court I'm sitting on. Well, that— Today, anyway. District courts can handle that sort of thing, Judge Higginbotham. But I think that's one of the reasons why we suggested invalidation of— We'll have to head out to a law clerk to figure out, yeah. —is perhaps a better course because really probably that's for Congress to figure out. Well, but I'll pick you up a little bit on that because you were talking about the limitless consequences of some of the alternative arguments. I'm going back in the other direction. I have some concern about the sweep of this in terms of remedy because when you look at the scope of the remedy, sometimes that will tell you a little bit about the wisdom of the front end, too. But anyway, I appreciate your argument if you're a good advocate. Judge Higginbotham, if I may just address that. The world is not going to fall if this one person, Mr. Michael Gray, who has already paid a substantial price— The world is not going to fall no matter what that happens in the government, although sometimes I wake up and wonder. Yeah, and I think that's why— I have great faith in the courts and the institutions. Yes, sir, and I think that's why Judge Kavanaugh went for the limited perspective remedy of severance as opposed to invalidation of all of Title X. But for all of these reasons, we would ask you to hold the agency structure unconstitutional and reverse Judge Barber's decision denying all Americans judgment for—excuse me, motion for judgment on the proceedings. Thank you. All right, thank you, Ms. Walker. Your case is under submission. The court will take a brief recess and then hear the final two cases.